Henderson v. Hovey.

R. A. HENDERSON v. C. M. HOVEY, *as Auditor of State.*— HARVEY H. HUBBELL v. S. G. STOVER, *as Treasurer of State.*

1. STATE TREASURY — *Drawing Money From.* No money can be drawn from the treasury of the state, except in pursuance of a specific appropriation made by law.

2. APPROPRIATION, *Payment in Excess of.* Where the legislature has made a specific appropriation of $2,000 for the compensation of the secretary, stenographer and other officers of the state senate during the sitting of the senate for an impeachment trial, neither the auditor nor treasurer of state has the authority to allow or pay any compensation for such officers in excess of said specific amount so appropriated.

*Original Proceedings in Mandamus.*

THE opinion, filed July 9, 1891, contains a sufficient statement of the facts.

*Chester I. Long,* for plaintiffs.

*John N. Ives,* attorney general, for defendants.

Chief Justice HORTON, speaking for the court, delivered an oral opinion in the above cases, in substance as follows:

These proceedings have been commenced in this court by *mandamus* to enable certain persons, who were employés of the senate, acting as a court of impeachment, to recover their compensation for their services. The state treasurer, in one case, has refused to register and countersign the warrant issued by the auditor, and has refused to recognize it. In the other case, the auditor of state has refused to audit the claim of the employé, and has also refused to issue any warrant for his services. The court has examined the various provisions of the statute which have been referred to. The claim is first made that, under § 3 of chapter 25 of the Laws of 1891, the senate had authority to transfer from the appropriation made to it of $8,000 for the per diem and mileage of its members, any balance not necessary for the pay of its members. It

passed a resolution transferring a portion of the $8,000 for the secretary, stenographer, and other officers of the senate. The conclusion of the court is, after giving the matter as much attention as it has been able to do in the time allowed, that § 3 of chapter 25 is a specific appropriation for the various amounts for the purposes therein named. For instance, there is no general appropriation for any amount to pay the whole expense of the trial. There are specific appropriations only. First, for the per diem and mileage of members of the senate and the president thereof, while sitting as a court of impeachment, $8,000 is given. There is a specific appropriation for the compensation of the secretary, stenographer, and other officers of the senate, of $2,000 only. Had the legislature, as it had the power to do, simply provided that $27,500, or any other general sum, was appropriated to pay the expenses of the trial, such an amount could be drawn out for that purpose. Section 3 of said chapter 25 reads as follows:

"To pay the expenses incidental to the trial of Judge Theodosius Botkin, who has been impeached by the house of representatives of high misdemeanors in office, there is hereby appropriated the following sums, or so much thereof as may be necessary, to wit: For per diem and mileage of the members of the senate and president thereof, while sitting as a court of impeachment, $8,000; per diem and mileage of the board of managers of the house of representatives and counsel and stenographer, to be appointed by said board, $1,500; compensation of secretary, stenographer, and other officers of the senate, $2,000; for service of process, $1,000; per diem and mileage of witnesses, $15,000."

Now, if the state senate had the right to transfer from the $8,000 any balance thereof for the compensation of its officers or employés, it had the same right, under said § 3, to transfer it for the purpose of paying counsel or anyone else employed in the trial. The constitution of the state ordains that "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law." (Art. 2, § 24.) Upon an examination of § 3, we find that specific ap-

propriations were made for several distinct and separate purposes, and this court has no authority to make any change in that section; and the legislature having specified the particular amounts for the several purposes, they can be used for those purposes, but those only.

It is next argued that, if § 3 of chapter 25 cannot furnish money for these employés, they ought to be paid from the general appropriation for the expenses of the legislature, under § 1 of chapter 25. The cardinal rule of construction is, that the intention of the legislature must control, and where there is appropriated a certain sum of money for the pay of members of the legislature and its officers and clerks, the ordinary conclusion would be that it is to apply to both houses of the legislature and its officers while in session as a legislature, and not while one body thereof is acting as a court of impeachment. Section 2 of said chapter 25 provides:

"That the pay warrants for the members of the legislature for the last 10 days of service shall not be drawn by the auditor of state until three days after the expiration of the 50 days of regular session, or upon the final adjournment of the legislature previous to the date herein fixed."

We think that the proper construction of said § 3 is, that the legislature intended to make a specific appropriation for the expenses of the impeachment trial of Judge Botkin, and did not intend that any other moneys should be used for that trial than those appropriated in said § 3. In carrying out the intent of the legislature, we must hold that there is no money appropriated to pay any compensation for the officers or employés of the senate during the trial of Judge Botkin, excepting the specific sum of $2,000. It may be possible that the legislature intended that $2,000 should be the limit of the expenses for those purposes, and having appropriated $2,000 only, this court cannot now say that the employés should be paid out of some other appropriation, or that more should have been appropriated. The state treasurer and the auditor must act in accordance with the specific appropriation named in said § 3.

It is further urged that the auditor should be required to issue his warrant, whether there is any balance of the specific appropriation remaining in the treasury or not. An examination of the provisions of the statute in regard to the duty of the auditor clearly shows that the auditor must take notice of what money has been appropriated for any specific purpose, and when that amount has been fully exhausted by claims presented and audited, he has no authority to allow or audit other claims and issue warrants therefor. (Gen. Stat. of 1889, ¶¶ 6582, 6597, 6676.) The warrant issued by the auditor was not, in our opinion, issued in conformity with the provisions of said chapter 25. The treasurer properly refused to recognize it. The auditor has no right, in the absence of a sufficient appropriation, to issue warrants generally, to be provided for by some future legislature. Considering all the terms of chapter 25, we cannot find our way clear to allow this writ. "The laborer is worthy of his hire," and it is very unfortunate that provision was not fully made by the late legislature for the payment of all the expenses of the impeachment trial. It provided that $2,000 should be appropriated for the officers or employés of the senate during the trial, and until further action is taken by the legislature, no more than $2,000 can be used to pay these parties. We cannot order the payment of the amounts prayed for, as this court cannot change the statute.

The writs of *mandamus* in both cases will be denied. We regret this result, but we do not make the laws; we only interpret them.

All the Justices concurring.