Argued 27 January, decided 1 March, 1904.

**BOYD *v.* DUNBAR.**

[75 Pac. 695.]

DUTY OF SECRETARY OF STATE AS AUDITING OFFICER.

1. The Secretary of State, as the auditor of public accounts and superintendent of the fiscal concerns of the commonwealth, has only such authority as is conferred by the constitution and statutes, and before drawing a warrant for a claim, or even auditing it, he must justify his act by some written law.

FUNDS FOR INDIAN WAR CLAIMS.

2. The statute appropriating money to pay the veterans of the early Indian wars of this State (Laws 1903, p. 228), section 3 of which provides that upon the filing with the Secretary of State of a proper voucher showing the amount payable to a claimant, the secretary shall issue a warrant for the sum due, does not affect the general statutes in relation to auditing claims or issuing warrants (B. & C. Comp. § 2397, subd. 7, and § 2398), and therefore the Secretary of State cannot draw a warrant for services in such Indian wars after the appropriation has been exhausted.

AUDITING CLAIMS—SPECIAL APPROPRIATION.

3. In cases of appropriations for particular purposes, where the act constitutes the only authority for incurring the expense, the power to audit and obligate by warrant is limited by the amount of the appropriation.

From Multnomah: JOHN B. CLELAND, Judge.

Mandamus proceeding by J. R. Boyd against F. I. Dunbar, as Secretary of State, to compel defendant to draw a warrant in favor of plaintiff on the State Treasurer. From a judgment granting the writ, defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Andrew M. Crawford*, Attorney-General, and *D. R. Parker*, with an oral argument by *Mr. Crawford*.

For respondent there was a brief over the names of *Julius C. Moreland* and *J. E. Burdett*, with an oral argument by *Mr. Moreland*.

MR. JUSTICE BEAN delivered the opinion.

This is a proceeding by mandamus to compel the defendant, as Secretary of State, to draw a warrant on the State Treasurer in favor of the plaintiff for $129.50, as compensation for services in the Indian wars of 1855–56. In 1903 the legislature passed an act "to provide for compensating volunteers for the service of the Territory of Oregon during the Indian wars of 1855–56 for such services, and appropriating money therefor": Laws 1903, p. 228. Section 1 provides "that there be and hereby is appropriated out of the general funds in the treasury of the State of Oregon the sum of $100,000, or so much thereof as shall be necessary, to pay the veterans of the

Indian wars of 1855–56 who served under and by virtue of the directions of the officers of Oregon Territory for their said service, under the conditions and upon the terms hereinafter provided." Section 2 fixes the amount to be paid the several claimants, and section 3, p. 229, reads : " The claim for such services, verified by the claimant, shall be presented to the Adjutant General, who shall, without additional cost to the State, examine and pass upon the same, and may require additional and corroborative evidence in support thereof ; and he shall prepare, certify, and file with the Secretary of State proper vouchers showing the amount payable to the claimant under the provisions of this act. Thereupon, the Secretary of State shall issue his warrant for the amount found due to the claimant." Section 4 provides who shall be entitled to the benefits of the act, and section 5 attempts to declare an emergency. Prior to the presentation of the plaintiff's claim, the secretary had, pursuant to the provisions of the act, and upon proper vouchers therefor, drawn warrants in satisfaction of the claims of Indian war veterans regularly presented to the full amount of the appropriation, and at the time of the presentation of the plaintiff's claim the appropriation was, and ever since has been, exhausted. He therefore declined to audit or allow it, but advised plaintiff that it would be referred to the next legislature for consideration.

1. Under the constitution and laws, the Secretary of State is the auditor of public accounts, and charged with the duty of superintending the fiscal concerns of the State: Const. Or. Art. VI, § 2 ; B. & C. Comp. § 2397. But he cannot audit or allow a claim or draw a warrant on the State Treasurer for the payment of money unless authorized to do so by law. His duties and powers in this regard are limited and controlled by the constitution and statutes, and he cannot go beyond them. He is required, as Mr.

Justice WOLVERTON says, "when a claim is presented, to look to the law, and determine whether the claimant has brought himself within any of its provisions allowing him compensation.   In other words, before allowing the claim he must be able to put his finger upon some law which gives the claimant a standing in his tribunal upon which he can demand payment by the State": *Shattuck* v. *Kincaid*, 31 Or. 379, 393 (49 Pac. 758).   In his capacity as auditor, the secretary is required "to examine and determine the claims of all persons against the State, in cases where provisions for the payment thereof shall have been made by law, and to indorse upon the same the amount due and allowed thereon, and from what fund the same is to be paid, and draw a warrant upon the treasury for the same ": B. & C. Comp. § 2397, subd. 7.   No warrant shall be drawn by him, however, "in payment of any claim against the State unless an appropriation has first been made for the payment thereof ; but, where such claim has been incurred in pursuance of authority of law, but no appropriation has been made for its payment, or, if made, has been exhausted, the secretary shall audit such claim, and, if allowed, shall issue to the claimant a certificate as evidence of such allowance ": B. & C. Comp. § 2398.   The secretary's duties as auditor are therefore confined to examining and determining the claims of persons against the State "in cases where provisions for the payment thereof shall have been made by law "; and he has no authority or power to draw a warrant in favor of any claimant, unless there is at the time an unexhausted appropriation for its payment.   Such are the mandatory provisions of the statute ; the latter having been enacted for the express purpose of changing the policy previously prevailing, which was approved in *Shattuck* v. *Kincaid*, 31 Or. 379, 393 (49 Pac. 758).

2. It would seem clear, therefore, that the secretary has no authority, and cannot be compelled, to issue a warrant

in favor of the plaintiff, because it is admitted that the appropriation made by the legislature for the payment of the claims of Indian war veterans had been exhausted before the presentation of the plaintiff's claim. The general language of the act of 1903, that, upon the filing of such a claim in the office of the Secretary of State, he shall issue his warrant for the amount due the claimant, does not repeal or modify the general statute in relation to auditing claims or issuing warrants thereon, nor was it intended to empower the Secretary of State to issue warrants for the particular class of claims mentioned, in excess of the appropriation. If, as is probable, the legislature was mistaken as to the amount necessary to pay and discharge the claims of the Indian war veterans, the remedy lies with it alone, and neither the secretary nor the courts can correct such mistake. The constitution provides that no money shall be drawn from the treasury but in pursuance of appropriation made by law: Const. Or. Art. IX, § 4. The object of this requirement is to secure to the legislative department the sole and exclusive power of determining how, when, and for what purpose the public fund shall be applied, and its will upon that question is mandatory on all the other departments of the government.

No person has a legal claim which he can enforce against the State except by its consent, and one demanding a warrant from the Secretary of State for the payment of money must be able to point out some law that clearly authorizes the expenditure. Before he can require the secretary to audit or allow a claim in his favor, he must find some law under which it was incurred, and the claim must have been presented within a specified time. Now in this case there is no existing provision of law for the payment by the State of the claims of the Indian war veterans, except the act of 1903. If there ever was a legal obligation on the

part of the State to assume and pay the debts of the territory to the volunteers in the Indian wars of 1855-56, the plaintiff's claim has long since been barred by the statute. From 1859 to the present time the statute has provided that all persons having claims against the State shall exhibit them, with evidence in support thereof, to the secretary, to be audited, settled, and allowed, within two years, and not afterwards : B. & C. Comp. § 2399. As plaintiff's claim was not so exhibited, the secretary could not audit or approve it without legislative authority, even if it be a legal obligation of the State. The only law under which he can lawfully act in auditing and allowing claims of the character now under consideration is the act of 1903, which is clearly a special appropriation made by the legislature for a particular purpose, the amount of which is the measure of the secretary's authority in the premises.

3. Where an appropriation is made for a particular purpose, and is the only authority for incurring the expense, the measure of the appropriation is the limit of the power to obligate the State, and the secretary can neither audit nor draw his warrant for a claim in excess of the amount named : *Henderson* v. *Hovey,* 46 Kan. 691 (27 Pac. 177, 13 L. R. A. 222); *Flynn* v. *Auditor General,* 99 Mich. 96 (57 N. W. 1092). There is nothing in the act of 1903 to indicate that the legislature thus intended to authorize the expenditure of any greater sum than the amount appropriated for the purpose stated, and, whatever may be the moral obligation of the State to Indian war veterans whose claims were not paid from such appropriation, the authority of the secretary is limited to the terms of the act, and he cannot go beyond its provisions, nor can the courts compel or authorize him to do so. The judgment of the court below is reversed.        Reversed.