[No. 14188.  *En Banc.*  September 4, 1917.]

THE STATE OF WASHINGTON, *on the Relation of Al. Helander,*
*Plaintiff,* v. C. W. CLAUSEN, *State Auditor, Respondent.*[1]

STATES — STATE OFFICERS — SALARY WARRANT — ISSUANCE—STATUTES.  Rem. Code, § 8346, giving the state auditor authority to appoint not exceeding three deputy inspectors of public offices, each to receive a salary of not exceeding $2,500 per annum, both the number and salaries of the deputies are thereby "ascertained and allowed by law," within the meaning of Id., § 9021, providing that the auditor shall draw a warrant upon the treasury for the amount of all salaries "ascertained and allowed by law."

STATES — STATE OFFICERS — SALARY WARRANTS — APPROPRIATION—NECESSITY.  Where a salary is "fixed and ascertained by law," it is the duty of the state auditor to draw a warrant therefor, although the governor vetoed the appropriation made by the legislature to cover it; notwithstanding Rem. Code, § 5025, making it unlawful for any state officer to create a deficiency or expend a greater sum than is appropriated by the legislature; Id., § 8975, providing that the salary of all state officers shall be paid monthly; Id., § 9008, providing that the auditor shall in no case issue any state warrant unless there is a law authorizing it; and Id., § 9021, which, in addition to requiring the auditor to draw warrants for salaries fixed by law, provides that no warrant shall be drawn by the auditor for unliquidated accounts and claims, the adjustment and payment of which are not provided by law, unless previous appropriation shall have been made by law for that purpose.

ELLIS, C. J., MAIN, and HOLCOMB, JJ., dissent.

Application filed in the supreme court May 2, 1917, for a writ of mandamus to compel the state auditor to issue a

[1]Reported in 167 Pac. 947.

warrant in payment of the salary of a deputy inspector and supervisor of public offices. Granted.

*Lyle & Henderson,* for relator.

*The Attorney General* and *Glenn J. Fairbrook, Assistant,* for respondent.

PARKER, J.—This is an original proceeding in this court wherein the relator, Helander, seeks a writ of mandate to compel the respondent, Clausen, as state auditor, to issue to him a warrant upon the state general fund for his salary as deputy inspector and supervisor of public offices, for the month of April, 1917.

The conceded facts may be summarized as follows. Relator is now, and has been for several years past, a duly appointed, qualified, and acting deputy inspector and supervisor of public offices. His salary, as such deputy, has been fixed by respondent Clausen, as state auditor, as it is conceded he had power to do, at $2,500 per annum. Relator's salary for the month of April, 1917, has not been paid, nor has respondent, as state auditor, issued to him any warrant therefor upon the state treasury, but has refused to do so solely because there has been no appropriation made by law for the payment of salaries of deputy inspectors and supervisors of public offices during the biennial fiscal term beginning April 1, 1917. The legislature of 1917 included in its general appropriation bill an appropriation for the maintenance of the bureau of inspection, which included the salaries of the deputy inspectors. This item of the appropriation bill was, however, vetoed by the governor; and the act having passed the legislature on the last day of the session, there was no opportunity for the legislature to consider the governor's veto, hence the effect of the veto was to make the situation the same as if there had been no attempted appropriation on the part of the legislature, so far as our present inquiry is concerned. Laws 1917, page 808. Relator, during the month of April, 1917, con-

tinued the performance of his duties as deputy under respondent, Clausen, as chief inspector and supervisor of public offices.

We are not here concerned with the question of whether or not relator is at this time entitled, as a matter of law, to the payment of his salary in money from the state treasury. It may be conceded that he cannot, at this time, be so paid, because of the want of an appropriation authorizing such payment. This would seem to be so because of § 4, art. 8 of the constitution, prohibiting the payment of money from the state treasury except in pursuance of an appropriation. The sole question here for consideration is: Has the relator a right to have issued to him a warrant upon the state general fund for the amount of salary due him for the month of April, 1917? This question is to be answered from an examination of the following provisions of our statutes found in Remington's Code:

Section 5025:

"It shall be unlawful for any of the state officers or trustees, managers, directors, superintendents or boards of commissioners of any of the public institutions of the state of Washington, or for the officers of any of the departments of the state of Washington, to create a deficiency, incur liability, or to expend a greater sum of money than is appropriated by the legislature for the use of said public institution or department."

Section 8346:

"There is hereby established in the department of the state auditor a bureau to be known as the bureau of inspection and supervision of public offices; the principal officer of said bureau shall be known as the chief inspector and supervisor of public offices; the state auditor shall be, *ex officio*, chief inspector and supervisor of public offices, and as such chief inspector and supervisor, shall appoint not exceeding three deputies, who shall each receive a salary not exceeding two thousand five hundred dollars per annum, and a clerk who shall receive a salary not exceeding fifteen hundred dollars per annum . . ."

Section 8355:

"The expense of maintaining and operating the bureau herein provided for shall be paid out of the state general fund in the same manner as other state employees."

Section 8975:

"The salaries of all state officers shall hereafter be paid monthly on the last day of each month, as provided by law."

Section 9008:

"The state auditor shall in no case issue any state warrant unless there is a law authorizing the issue of the same, and every warrant shall state the act under which it is drawn."

Section 9021:

"In all cases of grants, salaries, pay, and expenses ascertained and allowed by law, found due to individuals from the state when audited, the auditor shall draw a warrant upon the treasury for the amount, but in cases of unliquidated accounts and claims the adjustment and payment of which are not provided by law, no warrant shall be drawn by the auditor or paid by the treasurer, unless the previous appropriation shall have been made by law for that purpose. . . ."

Would the issuance of a warrant by the auditor, as prayed for, be creating a deficiency by him within the meaning of § 5025 above quoted, or the issuing of a warrant unauthorized by law, within the meaning of § 9008, above quoted? We think not, if relator's monthly salary has been "ascertained and allowed by law," within the meaning of § 9021, above quoted. In other words, if the law has the effect of creating such deficiency, the auditor would not be violating the prohibitions of §§ 5025 or 9008 by issuing a warrant which he is by § 9021 required to issue. Now we have seen that, by the terms of § 8346, above quoted, there are created in the bureau of inspection three positions of deputy inspector. It is true that the auditor is not compelled to fill all three of these positions, but we think it is, nevertheless, clear that there are, in fact, three such positions created by that section, and that the incurring of obligation on the part of the state to pay

their salaries, in amounts not exceeding $2,500 per annum, is expressly authorized.  Had the legislature authorized the auditor to appoint deputies without prescribing any limitations as to their number, it could have been well argued that he was not empowered to incur the expense of salaries for deputies appointed by him under such a power without an appropriation therefor, as it can be well argued that he has no authority to incur expense by appointing assistants, examiners and clerks, other than those specifically provided for, as to numbers, in the bureau of inspection law, without an appropriation therefor.  But when he is given authority, as he is in that law, to appoint a specified number of deputies and to fix their salaries at not exceeding $2,500 per annum, we are of the opinion that both the number of deputies and the amount of their salaries, when determined upon by the auditor, within the limitations prescribed, are thereby "ascertained and allowed by law" the same as if the legislature itself had finally determined the number of deputies and the amounts of their salaries.

Our recent decision in *State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 Pac. 1, is in harmony with and lends support to this conclusion.  So far as the question here involved is concerned, that case differs from this only in that the amount for which the warrant was there directed to be issued was ascertained and allowed by a judgment in a condemnation proceeding, prosecuted in pursuance of statutory authority, to acquire a right of way for a state highway, after which it was discovered that there was an insufficient appropriation to meet the award.  If that was an expense "ascertained and allowed by law," this certainly is.

The early decision of this court in *State ex rel. Brainerd v. Grimes,* 7 Wash. 191, 34 Pac. 833, is of interest in this connection, though it can be differentiated from the present case, in that the law there in question was viewed as an appropriation act, as well as an act providing for a state board

of land commissioners; that is, an appropriation act in so far as the ensuing biennial fiscal term was concerned, the salary involved being one falling due during the biennial fiscal term which immediately followed the passage of the act. Hence that cannot be said to be the issuing of a warrant in the absence of an appropriation, as it would have been had the warrant been issued after the expiration of the ensuing biennial fiscal term. We find but little aid from the decisions of other states, though the following may be cited as lending some support to our conclusion: *Evans v. McCarthy*, 42 Kan. 426, 22 Pac. 631; *Shattuck v. Kincaid*, 31 Ore. 379, 49 Pac. 758; *Lightfoot v. Lane*, 104 Tex. 447, 140 S. W. 89.

The only decision coming to our notice which may seem out of harmony with our views here expressed is that of *Leddy v. Cornell*, 52 Colo. 189, 120 Pac. 153, Ann. Cas. 1913C 1304, 38 L. R. A. (N. S.) 918. In that state, however, the doctrine of continuing appropriations prevails as not being repugnant to its constitutional provisions, as it is to ours. The Colorado constitution not only prohibits the payment of money from the state treasury except upon appropriation, as ours does, but its statutes prohibit the drawing of any warrant upon the state treasury except upon appropriation. That case involved a claim for salary of a secretary of a commission, the statute providing that "the secretary shall be paid a salary not to exceed $1,800.00 a year." The real question was whether or not these words constituted a continuing appropriation. It was held that they did not, because no amount was definitely fixed as an appropriation, hence there was no authority under the constitution and statutes of Colorado to issue to the secretary a warrant for his salary. We think that decision is not in point here.

We conclude that relator is entitled to a warrant as prayed for, to be drawn by the respondent, as state auditor, upon the "state general fund," that being the fund his salary is payable from by the provision of § 8355, above quoted. As to when and how such warrant shall be paid from moneys in

the state treasury is a question wholly foreign to our present inquiry.

A writ of mandate will issue accordingly.

Fullerton, Morris, Mount, and Webster, JJ., concur.

Chadwick, J., concurs in the result.

Main, J. (dissenting)—I am unable to concur in the majority opinion in this case, and will here state my reasons.

In the act of March 27, 1890, will be found defined the duties of the state auditor. Section 6, Laws 1890, p. 637 (Rem. Code, § 9008) provides:

"The state auditor shall in no case issue any state warrant unless there is a law authorizing the issue of the same, and every warrant shall state the act under which it is drawn; . . ."

Section 20, Laws of 1890, p. 640 (Rem. Code, § 9021) provides:

"In all cases of grants, salaries, pay and expenses, ascertained and allowed by law, found due to individuals from the state when audited, the auditor shall draw a warrant upon the treasury for the amount, but in cases of unliquidated accounts and claims the adjustment and payment of which are not provided for by law, no warrant shall be drawn by the auditor or paid by the treasurer, unless the previous appropriation shall have been made by law for that purpose, nor shall the whole amount drawn by and paid under any head ever exceed the amount thus appropriated: Provided, that where an appropriation is made by law to be paid out of the state treasury, it shall be the duty of the state auditor to draw a warrant or warrants upon the state treasurer in accordance with the provisions of such law in favor of the person or persons entitled to the same."

It will be observed that, by this section, where the claim is "ascertained and allowed by law," the auditor shall draw a warrant upon the treasurer without reference to the fact as to whether there has previously been made an appropriation out of which the warrant should be paid, but that, for claims for unliquidated accounts, no warrant shall be drawn by the

auditor unless a previous appropriation shall have been made by law for that purpose.

Section 22 of the same act (Laws 1890, p. 641) provides:

"In all cases where the laws recognize a claim for money against the state, and no appropriation shall be made by law to pay the same, the auditor shall audit and settle the same, and give the claimant a certificate of the amount thereof, under the official seal, if demanded, and shall report the same to the legislature with as little delay as possible."

It seems to have been the policy of the legislature, in passing this act, to recognize a distinction between claims "ascertained and allowed by law," mentioned in § 20 (Id., § 9021) and for which a warrant might be drawn without a previous appropriation, and cases where the laws "recognize" a claim. In the latter case, under the act, the claimant was only entitled to a certificate, not a warrant.

In 1895, the legislature passed an act (Chapter 35, Laws 1895, p. 58; Rem. Code, § 5025), relating to deficiencies in public institutions and departments of the state, the first section of which provides:

"That it shall be unlawful for any of the state officers or trustees, managers, directors, superintendents or boards of commissioners of any of the public institutions of the state of Washington, or for the officers of any of the departments of the state of Washington, to create a deficiency, incur liability, or to expend a greater sum of money than is appropriated by the legislature for the use of said public institution or department."

In *State ex rel. Rippetoe v. Cheetham*, 17 Wash. 483, 49 Pac. 1072, it was held that § 22 of the act of March 27, 1890, which provided that the claimant was entitled to a certificate where the laws recognized a claim and no appropriation had been made to pay the same, was annulled by § 1 of the act of 1895, above quoted, which makes it unlawful for any of the state officers to create a deficiency, incur liability, or to expend a greater sum of money than had been previously appropriated by the legislature.

Section 22 of the act of March 27, 1890, being no longer in effect, the question which is decisive upon the present application for a writ of mandate is whether the relator's salary is "ascertained and allowed by law." If it is so ascertained and allowed, it may be conceded, for the purposes of this case, that he is entitled to the writ. On the other hand, if his claim is not one which is ascertained and allowed by law, the writ should be denied. Inquiry must then be directed to the determination of this question.

Section 1 of the act before mentioned (Chapter 76, L. '09, p. 136; Rem. Code, § 8346), by which a bureau of inspection and supervision of public offices was created, provides that:

"There is hereby established in the department of the state auditor a bureau to be known as the bureau of inspection and supervision of public offices; the principal officer of said bureau shall be known as the chief inspector and supervisor of public offices; the state auditor shall be, ex officio, chief inspector and supervisor of public offices, and as such chief inspector and supervisor, shall appoint not exceeding three deputies, who shall each receive a salary not exceeding two thousand five hundred dollars per annum, and a clerk who shall receive a salary not exceeding fifteen hundred dollars per annum, and in addition thereto an allowance for all necessary traveling and hotel expenses while absent from their places of residence in the discharge of their official duties."

By this statute, the state auditor, as *ex officio* chief inspector and supervisor of public offices, has the right to appoint "not exceeding three deputies," each of whom shall receive a salary "not exceeding two thousand five hundred dollars per annum." The act nowhere provides that the auditor shall appoint three deputies, and that the salary of each shall be the sum of two thousand five hundred dollars. The number of deputies, not exceeding three, and the salary of each deputy, not in excess of two thousand five hundred dollars, is left to the judgment or discretion of the state auditor. It is fair to assume that, if the state auditor found that the duties of the bureau could be discharged with the assistance of one

deputy at a salary of two thousand dollars a year, he would not keep upon the pay-roll three such deputies at a salary of two thousand five hundred dollars each. This statute is merely a limitation upon the power of the state auditor respecting the number and compensation of deputies. It certainly falls short of creating the legal obligation on the part of the state to provide employment for three persons at the maximum salary specified. Had the auditor, in the exercise of the judgment and discretion given him by the statute, fixed the salary of the relator at two thousand dollars per year, can it be said that mandamus would lie to compel the auditor to issue a salary warrant on the basis of a salary at two thousand five hundred dollars per year? It is necessary for the auditor to act before any right to a salary can arise. Before a claim can be said to be "ascertained" by law, it is necessary that it be made certain, fixed, or determined by law. To ascertain a matter is "to make (a thing) certain to the mind; to free from obscurity, doubt, or change; to make sure of; to fix; to determine." (Webster's Dictionary.) This definition has been judicially approved in: *Wicecarver v. Mercantile Town Mut. Ins. Co.*, 137 Mo. App. 247, 117 S. W. 698; *Brown v. Lyddy*, 11 Hun (18 N. Y.) 451.

In *Leddy v. Cornell*, 52 Colo. 189, 120 Pac. 153, Ann. Cas. 1913C 1304, 38 L. R. A. (N. S.) 918, the court had before it an act of the legislature which, among other things, provided for the appointment of a secretary to the civil service commissioners, and that the "secretary shall be paid a salary not to exceed eighteen hundred dollars a year, . . ." The court there was of the opinion that the act did not fix the specific amount which the secretary was to receive, but merely placed a limit upon the same. Upon this question, it was said:

"The act itself does not fix the specific amount which the secretary is to receive, but merely places a limit beyond which no legislature in the future may go, until the act is amended, in making appropriations for its payment."

As I read the case of *State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 Pac. 1, it does not support the majority opinion. In that case, the state had acquired by condemnation private property for use as a highway, and had taken possession thereof. The highway fund being exhausted, the auditor declined to issue a warrant to the property owner for the amount of the judgment. It was there held that, since, under art. 1, § 16, of the constitution, land shall not be appropriated to a public use unless its value is first ascertained and paid into court for the owner, the warrant should issue. That case merely enforced a positive requirement of the constitution. The case, as I understand it, has no application to the facts in the present case, and the argument there, so far as material, tends to support the opposite view, for it is there said:

"Where a law creates an office, no special appropriation is necessary to authorize the issuance of a warrant for the payment of a salary fixed by the terms of the act."

It would seem to follow that the converse of the proposition just quoted from the *Peel* case must necessarily be true, that is, if the salary is not fixed by the terms of the act, and no special appropriation has been made to pay the same, mandamus will not lie to compel the issuance of a warrant. The salary of the relator, the amount of which is to be determined by the state auditor, with only a maximum fixed, beyond which he may not go, cannot be said to be made definite, certain, or fixed by the law. In other words, it is not ascertained and allowed by law.

Neither reason nor authority will sustain the holding that mandamus will lie to compel the issuance of a salary warrant when no special appropriation has been made by the legislature therefor, and such salary is not fixed or ascertained by law, but is left to the judgment or discretion of an intervening agency, such as the state auditor in this case.

The cases of *Evans v. McCarthy,* 42 Kan. 426, 22 Pac. 631; *Lightfoot v. Lane,* 104 Tex. 447, 140 S. W. 89; and

*Shattuck v. Kincaid*, 31 Ore. 379, 49 Pac. 758, are clearly distinguishable.

In the *Evans* case, it was held that an act making an appropriation for the state-house fund was an appropriation *in praesenti*, even though the taxes levied for that fund had not found their way into the state treasury. There, there was an appropriation. Here, there is no such appropriation.

In the *Lightfoot* case, the supreme court of Texas held that the Attorney General had the right to compel the issuance of a salary warrant. In that state, however, the Attorney General's salary was definitely fixed by the constitution at two thousand dollars per year.

In the *Shattuck* case, the supreme court of Oregon directed the issuance of a warrant for the salary of a circuit judge. In that state, such salary was definitely fixed by act of the legislature at three thousand dollars per year.

In neither of the cases last referred to was the amount of the salary left to the judgment or discretion of any officer, but was definitely fixed by the law itself.

In my opinion, the writ should be denied, and I therefore dissent.

HOLCOMB, J. (dissenting)—I concur with the dissent of Judge Main. The reasoning on the last contention in *State ex rel. Rippetoe v. Cheetham*, 17 Wash. 483, 49 Pac. 1072, is forceful and applies with controlling force here.

ELLIS, C. J., concurs with HOLCOMB, J.