JEWEL P. LIGHTFOOT, ATTORNEY-GENERAL, v. W. P. LANE, COMPTROLLER.

No. 2323. Decided October 18, 1911.

**1.—Mandamus—Comptroller—Treasury Warrant—Salary of State Officer.**

The Comptroller is authorized and required by article 4854, Revised Statutes, to issue his warrant upon the Treasurer for the monthly payment fixed by law of the salary of a state officer .(Attorney-General) upon the filing of proper voucher for same, and may be required to do so by mandamus. He is not concerned with the payment; nor is his duty or the officer's right to the warrant affected by article 8, section 6, of the Constitution which forbids money being drawn from the Treasury except in pursuance of specific appropriations. Pickle v. Finley, 91 Texas, 484, distinguished. (Pp. 447-450.)

**2.—Same.**

Section 14, of chapter 17, Acts, 3d Called Session, 31st Leg., p. 37 (General Appropriation) does not apply to the issuance of a warrant for the monthly salary of a state officer (Attorney-General) whose office is created and salary fixed by the State Constitution, and the Comptroller is not authorized thereby to refuse to issue the warrant because no appropriation has been made for its payment. (P. 449.)

Original proceeding in the Supreme Court by Lightfoot for writ of mandamus against Lane as Comptroller.

*Jewel P. Lightfoot, John W. Brady* and *E. B. Robertson,* for relator.

*W. P. Lane,* respondent, in pro. per.

*C. E. Lane* filed an argument as amicus curiae.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

By permission of this court the relator, Jewel P. Lightfoot, filed herein his petition for a writ of mandamus to be issued to W. P. Lane, Comptroller of the State, alleging that on October 2, 1911, the relator was and now is the duly elected and qualified Attorney-General for the State of Texas, and that the respondent was then and is now the duly elected and qualified Comptroller of the State.

It is alleged that relator was duly elected Attorney-General of the State at a regular election and qualified according to law; that he entered upon the discharge of his duties and was, under the Constitution of the State, entitled to receive from the State, as his salary, the sum of $2000 per annum. That the relator served the State as Attorney-General during the month of September, 1911, and, on the 2d day of October of that year, presented to the Comptroller of the State his voucher for his salary for the month of September, 1911, demanding of the said Comptroller that he issue to relator a warrant drawn on the Treasurer of the State for the sum of $166.66. The voucher presented was not objected to and was in due and proper form.

The Comptroller refused to issue the warrant. The refusal of the respondent to issue the warrant was based upon the assumed fact that the appropriation made by the Legislature for the payment of the salary of the Attorney-General was vetoed by the Governor, and for that reason respondent was not authorized to issue such warrant. The respondent bases his refusal upon section 14 of chapter 17 of the Acts of the Third Called Session of the Thirty-First Legislature, to be found on page 37 of said Acts. The fourteenth section of said Act reads as follows:

"No warrant shall be drawn on the Treasury of this State by the Comptroller based alone on the requisition of any individual or board, except as otherwise provided by law, but in all cases an account must first be made in pursuance of some specific appropriation, and filed with the Comptroller, by someone duly authorized, and verified by affidavit."

The first question that confronts us is, does the fact, if it be true, that the Governor vetoed the entire appropriation for the Attorney-General's department, thereby leaving no money in the treasury for the payment of his salary or other expenses of his office, justify the act of the Comptroller in refusing to issue the warrant for relator's salary?

Section 22 of article 4 of the Constitution provides for the election of an Attorney-General for the State of Texas and prescribes his duties. Said section contains this language:

"He (the Attorney-General) shall receive for his services an annual salary of $2000 and no more, besides such fees as may be prescribed by law; provided, that the fees which he may receive shall not amount to more than $2000 per annum."

Thus we see that the salary of the Attorney-General is fixed by the Constitution, and, when he had been duly elected and qualified and had served in the discharge of his duties, his right to a warrant for a month's salary was fixed by the terms of article 4854, Revised Statutes, which reads as follows:

"Officers entitled to salaries may demand monthly payment of same, and upon filing with the Comptroller of public accounts proper vouchers, the Comptroller shall issue his warrant upon the Treasurer for the amount of salary due to the officer applying therefor, and the Treasurer shall pay such warrant out of the fund appropriated for the payment of the same."

The terms of that article are plain and confer no authority upon the Comptroller to inquire into the existence or validity of the appropriation.

The Comptroller has evidently failed to discriminate between the provisions of article 4854, Revised Statutes, and section 14 of the Act of the Thirty-First Legislature, heretofore copied. The claim of the Attorney-General did not belong to the classes named in section 14 and was not required to be audited nor approved by respondent, whose duties in respect to official salaries are purely and simply ministerial. Article 4854 expressly says that "the Comptroller shall issue his warrant upon the Treasurer for the amount of salary due to the officer applying therefor and the Treasurer shall pay such warrant out of the fund appropriated for the payment of the salary." The Comptroller was in no wise concerned about the payment of the warrant. He is not charged with the disbursement of the money of the State, nor is he in any manner responsible therefor. Article 4854 is mandatory in its terms and respondent had nothing to do but issue the warrant on a proper voucher.

The classes of claims embraced in the provisions of section 14 of the Act of the Thirty-First Legislature, before quoted, do not include annual salaries of officers, but are expressly limited to such claims as are "based alone on the requisition" of an individual or board. It was a wise precaution for the Legislature to approve such claims by making the appropriation before a warrant should be drawn. But the reason has no application to salaries of officers fixed by the Constitution or the law.

Pickle v. Finley, 91 Texas, 484, is referred to as sustaining the position that there must be an appropriation by the Legislature to authorize the issuance of a warrant, but that case is plainly distinguishable from this. Pickle was not an officer; he had received appointment as stenographer for one of the Courts of Civil Appeals and the Legislature had before that fixed the salary for such stenographer at $1200 a year. Pickle was not required to take the oath of office prescribed by the Constitution for all officers; no term of office was prescribed (art. 1012, Rev. Stats.); he was simply and plainly an employee of the State and does not come within the terms of article 4854, Revised Statutes. In applying that decision to the case now before the court it must be observed that the state of facts upon which Judge Gaines was writing and upon which the court rested its opinion were simply that Pickle had received from Finley a warrant for $600, which was the sum appropriated by the Legislature for his compensation. He cashed that warrant and then sought to compel Finley to issue to him a warrant for $600 as remainder of the sum specified in the Act which authorized the court to appoint him. Pickle's claim was not embraced in article 4854, Revised Statutes, and this court held that the warrant could be drawn only for the amount appropriated without citing the statute relied upon. The facts distinguish this from the Pickle case. There is no conflict. In the closing paragraph of that opinion Judge Gaines says: "We do not hold that the relator is not entitled to balance due upon his salary

as claimed by him; we merely hold that there has been no appropriation for the payment of that balance and that the Comptroller is not authorized to draw his warrant therefor." The conclusion of that learned judge is correct when tested by the facts of that case and would not have been deduced from the facts now before this court.

This provision of the Constitution, article 8, section 6, "No money shall be drawn from the treasury but in pursuance of specific appropriations made by law," does not apply to relator's warrant, which was not a payment, nor did the issuing of the warrant draw money out of the treasury. State v. Wilson, 71 Texas, 300. The warrant could not be paid until appropriation should be made if not theretofore made.

Relator seeks only a writ of mandamus, "commanding and requiring respondent to draw and deliver to relator a warrant upon the Treasurer of the State of Texas for the sum of One Hundred Sixty-six & 66/100 Dollars in payment of the salary of relator as aforesaid; and that relator have judgment for all costs and for general relief."

The acts of the Governor charged to have been unlawfully done in vetoing and mutilating the appropriation bill, if true, are wholly without relevancy to the right of relator to the warrant. The Secretary of State, who is by law required to cause the bill to be printed correctly, is not a party to this proceeding, neither is the Treasurer, who must cash the warrant, hence no judgment can be entered against either of them. Any decision of those matters would be uncalled for, therefore this court will not intimate an opinion as to either.

It is therefore ordered that the clerk of this court issue the writ of mandamus as prayed for by relator directed to W. P. Lane, Comptroller of Public Accounts of the State of Texas, commanding him to issue and deliver to relator, Jewel P. Lightfoot, a warrant upon the Treasurer of the State of Texas for the sum of One Hundred and Sixty-six & 66/100 Dollars for salary due relator as Attorney-General of the State of Texas for the month of September, 1911, and that the respondent, W. P. Lane, pay all costs of this proceeding.

Associate Justice W. F. Ramsey did not participate in the decision of this case.