

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

May 7, 1962

Hon. Bill M. Collins
Executive Director
Texas State Parks Board
Austin, Texas

Opinion No. WW-1328

Re: Whether the State Parks Board
is authorized to issue warrants
payable to Mr. Vessels at the
rate of $494 per month under
the stated facts and related
question.

Dear Mr. Collins:

You request the opinion of this office on the following
questions: Is the State Comptroller legally authorized to issue
warrants payable to Mr. Jay Vessels at the rate of $494 per month,
beginning March 1, 1962? If the first question is answered in the
affirmative, is the State Comptroller legally authorized to issue
warrants payable to Mr. Vessels for the difference between the sal-
ary rate of $494 per month and the amount actually paid, retroac-
tive to August 21, 1961?

The material facts are set forth below. For reasons
which will become evident later, we advise that this opinion is
based upon the facts herein presented and no others.

On August 21, 1961, upon motion of Mr. Kilman, the State
Parks Board unanimously adopted an order to place Mr. Jay Vessels
in full-time employment with an annual salary of $5,928. No ac-
tion was taken regarding Mr. Vessels' status until September 1,
1961. At that time, the decision was made that Mr. Vessels could
not be paid more than the midpoint of salary group 10 ($4735 per
annum), based upon the classification of his position as Director
of Public Information, Class No. 7810. Mr. Vessels apparently
was paid the midpoint salary from September 1, 1961, until Febru-
ary 28, 1962.

The official minutes of the State Parks Board reflect
the following action on February 20, 1962:

"WHEREAS, on August 21, 1961 the Texas State
Parks Board unanimously agreed that Jay Vessels be
put on a full-time basis at the amount appropriated
for Director of Public Information and Editor of
S-Parks; and

"WHEREAS, it was the intention of the Board
that said action be effective immediately, as of

August 21, 1961, and that the salary that the Board
intended to be paid to said Jay Vessels beginning
August 21, 1961 was the appropriation of $5,928
($494 a month), appropriated for Historian and Re-
search Director, now therefore,

"BE IT RESOLVED, that the minutes of said meet-
ing of August 21, 1961 be clarified to evidence the
true intention of the State Parks Board that said
Jay Vessels be appointed Historian and Research Di-
rector effective August 21, 1961 at the full salary
of $494 a month."

By letter dated February 28, 1962, carbon copy to Comp-
troller of Public Accounts, Mr. Everett Anschutz, the duly ap-
pointed and acting Classification Officer in the office of the
State Auditor, advised the State Parks Board that the Legislative
Audit Committee had authorized him to obtain and consider the
facts of this situation for the purpose of resolving any inequity
that might be found to exist.  The findings and conclusions of
the Classification Officer are stated in the following paragraphs
from his letter:

"Had the Board order been carried into effect
Mr. Vessels, under the terms of House Bill 189 and
Senate Bill 1, would have been eligible to receive
a salary of $5,928 per year during the current bien-
nium.

"It is my opinion that Mr. Vessels has been
inadvertently deprived of the salary protection in-
tended by the Legislature in House Bill 189 and
Senate Bill 1, and that it would be proper to re-
store, as of March 1, 1962, the rate of $5,928 per
year ($494 per month)."

The State Parks Board submitted a payroll to the State
Comptroller covering Mr. Vessels for the month of March 1962, in
the amount of $494.  The request for this opinion then states,
"The State Comptroller has refused to issue a warrant in payment
of said claim unless the Office of the Attorney General issues a
written opinion that the State Comptroller is legally authorized
to issue a warrant in said amount."

House Bill No. 4, General Appropriations by the Fifty-
sixth Legislature (3rd C.S. 1959, Art. III) provided out of the
General Revenue Fund to the State Parks Board for salaries and
wages line item number five, Historian and Research Director,
with an annual salary not to exceed $5,748.  Section 42 of Arti-
cle V of the same Act added $180 annually to the line item for

a total annual item appropriation of $5928. Article 6067, Vernon's Civil Statutes, created the State Parks Board and subsequent statutes prescribe the duties of the board. There can be no question that it is the board upon whom the authority of these statutes is conferred, and this includes the authority to employ and discharge, in the board's discretion, such employees as may be provided for in appropriations to the board. See Attorney General Opinions WW-32 (February 21, 1957) and WW-66 (March 18, 1927).

The State Parks Board was authorized to employ a Historian and Research Director and to determine the necessity of filling the position, together with the discretion to set the salary so long as the maximum item appropriation was not exceeded. These questions were concluded by the decision of the board in its minute orders referred to previously. In a similar situation, the Supreme Court of Texas would not consider the necessity for a particular employee or the propriety of his employment. Terrell v. Sparks, 104 Tex. 191, 135 S.W. 519, 522 (1911).

Attorney General Opinion No. WW-1306 (April 11, 1962) was concerned with a dispute of the validity of findings by the Texas Highway Commission and is in agreement with this opinion. Johnson v. Ferguson, 55 S.W.2d 153, 160 (Civ.App. 1932, error dism.) was cited in that opinion on this point and for emphasis is quoted here:

> ". . . In matters of judgment touching the commissioner's functions, theirs, and not that of another is supreme. Certainly their acts other than those of a purely ministerial nature should not be stayed at the hands of the courts, and the important functions of the department thereby impeded or impaired, except upon verified allegations of fact showing unequivocally that they are exceeding the bounds of their legal authority; and as certainly: Their acts 'in the exercise of an honest discretion, must be respected when untainted by fraud . . . or such abuse of discretion as under the authorities would avoid the same. . . .'"

In the absence of verification of fraud or facts unequivocally showing that an agency has exceeded its authority in these matters, the appellate courts of this State will not question the judgment of the board or commission to whom the discretion is committed; neither will the Attorney General nor shall the State Comptroller or his employees.

The fact that the State Parks Board deemed it necessary on February 20, 1962, to correct and clarify its previous minute

Order of August 21, 1961, is immaterial.  The right of adminis-
trative bodies to amend their records does not depend on statute,
it is an inherent right.  When the records do not speak the truth
or are subject to misunderstanding, they may be changed to con-
form to the actual truth.  73 C.J.S. 317, Minutes and Records,
Sec. 22, and cases there cited.

Turning to the current General Appropriations by the
Fifty-seventh Legislature (Senate Bill No. 1, 1st C.S. 1961), we
find that in Article III, appropriations to the State Parks Board,
there is no job classification for Historian and Research Direc-
tor.  There is, however, the position of Director of Public In-
formation, Class No. 7810.  This is the same class and position
for which Mr. Vessels has been paid the midpoint salary since Sep-
tember 1, 1961.

The letter from the Classification Officer to the State
Parks Board, referred to previously, constitutes a determination
that the previous position of Historian and Research Director
held by Mr. Vessels now appears as the position of Director of
Public Information, Class No. 7810.  There can be no question
that Mr. Vessels has performed the duties of this position, at
least since September 1, 1961, since he has received compensation
at the midpoint salary for the position.

The Classification Officer's letter also constitutes a
finding that had the previous salary proviso of the Position
Classification Act of 1961 been applied, Mr. Vessels would have
been entitled to receive the higher salary of his previous posi-
tion as Historian and Research Director.

The Position Classification Act of 1961 is codified as
Article 6252-11, Vernon's Civil Statutes.  The previous salary
proviso is the third paragraph in Section 2 of the statute and
reads as follows:

"It is further provided, however, that no em-
ployee who is presently employed by the State shall
be paid less through the application of this Act
than the salary he received in accordance with the
provisions of House Bill No. 4, Acts of the Fifty-
sixth Legislature, Third Called Session, 1959, or
the minimum of the appropriate salary range speci-
fied in the General Appropriations Act effective
September 1, 1961, whichever is the higher, so long
as said employee remains in such classified position
under the Position Classification Plan."

We believe that when the previous salary proviso and
the emergency clause of the Position Classification Act of 1961

(Section 9) are read together, a clear legislative intent is evidenced to protect to the public employee his higher previous salary, equitably resolving all reasonable doubts in favor of the public employee. Attorney General Opinions WW-1135 (September 7, 1961), WW-1139 (September 11, 1961), WW-1159 (October 6, 1961), WW-1222 (December 14, 1961), and WW-1293 (March 29, 1962) on the Position Classification Act of 1961 are consistent with this conclusion.

We are also of the opinion that the facts of this case clearly show that the jurisdiction of the Classification Officer was properly invoked to predetermine whether the action in question constituted an exception or violation of the Position Classification Plan and that the Classification Officer's determination of the facts are conclusive, not only upon the State Comptroller and his employees, but the Attorney General as well, for the reasons set forth in the following paragraphs.

Section 6 of the Position Classification Act establishes in the office of the State Auditor the position of Classification Officer who shall be appointed by the State Auditor, subject to the advice and approval of the Legislative Audit Committee. The last three paragraphs of Section 6 relate to the duties of the Classification Officer with respect to enforcing the provisions of the Act, as follows:

"When exceptions to or violations of the Position Classification Plan or of prescribed salary ranges are revealed by personnel audits, the Classification Officer shall notify the agency head in writing and specify the points of nonconformity or violation. The executive head of such agency shall then have reasonable opportunity to resolve the exception or end the violation by reassigning the employee to another position title or class consistent with the work actually performed, by changing the employee's title or salary rate to conform to the prescribed Classification Plan and salary range, or by obtaining a new class description of work and salary range to correct the exception or violation.

"If no action is taken by the executive head of such agency to correct or end the exception or violation within twenty (20) calendar days following the date of the written notification made by the Classification Officer, such Officer shall make a written report of the facts to the Governor and the Legislative Budget Board. The Governor may then determine, after obtaining the advice of the Legislative Audit

Committee, the action to be taken in correcting the exception or violation and may, within his discretion, direct the Comptroller not to issue payroll warrants for the employee or for the position affected by the exception or violation until such discrepancy has been corrected.

"Any decision or finding made by the Classification Officer under the provisions of this Act may be appealed by any employee or by the executive head of any agency to the Legislative Audit Committee under such rules governing appellate procedure as said Committee may adopt."

Section 8 of the Act provides that all laws or parts of laws in conflict with the Act are repealed or modified to the extent of such conflict only.

The language of these sections is clear that the Classification Officer initiates actions to enforce exceptions or violations of the provisions of the Classification Plan. A clearly defined procedure for the action is designated, and when all other methods are incapable of obtaining conformance with the Act, the Governor may direct the Comptroller not to issue the payroll warrant of the employee or position involved.

In the entire act, the State Comptroller is mentioned only to the extent that certain information is to be provided him. In fact, the only apparent duty of the Comptroller or his employees with respect to the Act appears in Subsection G of Section 13 of Article III of the General Appropriations by the Fifty-seventh Legislature, supra, which reads as follows:

"G. Pre-Audit by Comptroller. In order to facilitate compliance with the provisions in this Section and the pre-audit of payrolls, each agency affected by the Position Classification Act of 1961 and for which appropriations are made in this Act shall certify to the Comptroller on such forms and at such times as he may prescribe, the rate of pay applying to each affected employee at such time as he may prescribe, the class of work and pay rate applying to each affected employee at any given date as he may prescribe during the biennium ending August 31, 1963, the variation in the amount of salary or wage payments to which he is entitled, and the fund or funds from which such additional amounts are payable."

We think that further elaboration is unnecessary to conclude that the above Section is not, nor was it intended to be, authority for the Comptroller's action in this case. In the face of a clear statutory designation of the officers of the State to whom enforcement of the provisions of the Position Classification Act are entrusted, there can be no doubt that the Comptroller is without authority for his action in this case.

There is no maxim of statutory construction so settled in the law as that which holds that an action of the Legislature shall not be so construed as to render the action meaningless or frivolous. See 82 C.J.S. 593, 622, Statutes, Secs. 323, 326. This, we think, would be the result if the Comptroller's action in this case were condoned. A determination by the Classification Officer and the Legislative Audit Committee that Mr. Vessels is entitled under the facts to receive the protection of the salary protection proviso is rendered a nullity, if in order for the payroll warrant to be issued the action must conform to the satisfaction of the Comptroller or his employees or if the action must be affirmed by the Attorney General.

We reserve no doubt that had the Legislature intended for the Comptroller or his employees to determine whether or not a particular employment was an exception or in violation of the Position Classification Act, it would have done so in the same clear language that it bestowed that function upon the Classification Officer, the Legislative Audit Committee and the Governor. We think that it equally is clear that the Comptroller, not having such authority directly, cannot exercise the authority indirectly by refusing to issue the payroll warrant in question.

The Supreme Court of Arizona construed the duty and responsibility of the officer charged with auditing claims against the State and issuing warrants for payment in Procter v. Hunt, 43 Ariz. 198, 29 P.2d 1058 (1934). The case involved a statutory action for recovery of funds and penalties from the State Auditor of Arizona for allegedly issuing warrants for claims not for a public purpose as required by the Constitution and Statutes of Arizona.

As quoted by the Court at 29 P.2d 1060, the State Auditor of Arizona, whose duties to audit and issue warrants are comparable to those of the State Comptroller of Texas, had the following specific statutory authority to investigate claims presented for payment:

" . . . If such an investigation discloses that all or any portion of any claim is not for an actual public purpose connected with the activities of the

office, board, commission, or department where
the claim originated, he shall refuse to draw
a warrant, except for such amount of each claim
as appears to be for an actual public purpose.
. . ."

Despite the broad language of this statute, the Court
said (page 1060):

". . . After this is done [referring to certain
prerequisites of form for submitting a claim],
it must be presented to the auditor, and, if it
is, on its face, for a public purpose and is
properly itemized and accompanied by vouchers,
and an appropriation has been made by law for
that purpose, it is the mandatory duty of the
auditor to approve said claim and to issue a
warrant therefor: no discretion being given, if
the matters recited beforehand appear in the
claim as presented. Callaghan v. Boyce, 17 Ariz.
433, 153 P. 773." (Emphasis added)

Continuing on page 1061, the Court explained that the
reason for its holding was actually for the benefit of the audi-
tor:

". . . If this is not true, and if the
auditor must, at her peril, determine not only
that the claim, on its face, was for a proper
purpose and that there is an appropriation to
pay it, but that the items of the claim were
necessary and actually used for their ostensible
purpose, she must, by herself or her deputies,
investigate every transaction of every depart-
ment of the state government to the uttermost de-
tail, before she dare approve a claim for the
purchase of even a paper of pins. No officer
could make a long-distance telephone call, how-
ever urgent, until he had first consulted with
her as to its necessity and advised her of all
its details, so that she might determine if it
were for a public purpose. . . ."

We think that due to the similarity of the Arizona pro-
cedure for auditing claims and issuing warrants with those of
Texas, and particularly due to the fact that under these particu-
lar circumstances the State Comptroller does not have the specific
duty and authority to investigate claims possessed by the State
Auditor of Arizona, the Procter case is authoritative. But there
is more, an even earlier decision of the Supreme Court of Texas.

In Fullmore v. Lane, 104 Tex. 449, 140 S.W. 405 (1911), a mandamus action to compel the State Comptroller to issue his warrant for the salary of a state employee, the Supreme Court of Texas construed a predecessor statute (Acts 3rd C.S. 1910, p. 37) to the present Article 4357, Vernon's Civil Statutes. Both the previous and the present statute relate to auditing claims and issuing warrants of the type here in issue and in this respect are not materially different.

The Court recognized that the duty of the Comptroller to issue the warrant was discretionary to the extent necessary to ascertain whether the claim was made in pursuance of some specific appropriation. The discretion did not clothe the Comptroller with absolute or arbitrary power to withhold the issuance of his warrant the Court said, however, at 140 S.W. 406:

". . . If no such appropriation has been made as a basis for the claim, the Comptroller is not required to issue the warrant; but on the other hand, if such appropriation has been made, and the requisition for the warrant is made in pursuance thereof, his duty to issue the warrant is mandatory, and he cannot lawfully withhold the issuance of the warrant." (Emphasis added)

Attorney General Opinion V-1111 (October 3, 1950) construed the duties of the county auditor to examine and approve claims in connection with expenses of visiting district judges. We believe that the facts of the opinion are sufficiently in point for it to be relevant.

Article 1660, Vernon's Civil Statutes, requires that no claim, bill or account shall be allowed or paid by the commissioners court until it has been examined and approved by the county auditor. Section 10 of Article 200a provides that when district judges are assigned to districts other than their own, they shall receive actual expense for travel and subsistence which shall be paid out of the General Fund of the county in which their duties are performed, upon accounts certified and approved by the presiding judge of the administrative district.

The opinion held that expense accounts of the visiting district judge are subject to audit by the county auditor from a "bookkeeping standpoint," but such audit is not to be construed so as to authorize a county auditor to review the legality of items of expendutire contained in the expense account when the same has been certified and approved by the presiding judge of the administrative district.

We believe that the authorities discussed above are sufficient to define the extent and limit of the Comptroller's duty in auditing claims presented to him for payment.  In this case, all prerequisites of form for a valid payroll voucher presumably being in order and an appropriation item with sufficient funds to pay the voucher being in existence, there remains but the ministerial duty of the Comptroller to issue the payroll warrant, which duty is mandatory.

Turning now to the second question for which our opinion was requested:  Is the State Comptroller legally authorized to issue warrants payable to Mr. Vessels for the difference between the salary rate of $494 per month and the amount actually paid, retroactive to August 21, 1961?

We have previously stated that in the absence of verification of fraud or facts unequivocally showing that an agency has exceeded its authority in matters such as this, the appellate courts of this State will not question the judgment of the board or commission to whom the direction is committed.  This being true, we believe that Mr. Vessels was in fact employed at an annual salary of $5928, beginning from the time of the State Park Board's minute order of August 21, 1961.  The mere fact that due to an accounting error no fault of his own the proper payroll entry was not made until March 1962 should not operate to deprive Mr. Vessels of the salary set by the State Parks Board in its original order.

Article III, Section 44 of the Constitution of Texas states:

"The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant,  or public contractor, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law."

A contract of employment authorized by statute and made by an officer having authority binds the State.  See Terrell v. Sparks, supra, at 135 S.W. 521.  The pre-existing law upon which a claim is based must create a legal obligation sufficient to

form the basis of a judgment against the State in a court of competent jurisdiction should the State consent to be sued.  See Austin Nat. Bank v. Sheppard, 123 Tex. 272, 71 S.W.2d 242, 245 (1934).  We think that the facts of this case demonstrate a valid contract for employment based upon pre-existing law within the meaning of the previous two cases.

The payment to Mr. Vessels for the difference between the salary rate of $494 per month and the amount actually paid him during the period from August 21, 1961, to February 28, 1962, is not the granting of extra compensation prohibited by Article III, Section 44 of the Constitution of Texas because under the previous salary proviso of the Position Classification Act, Mr. Vessels was entitled to be paid no less through the application of the Act than the salary he received pursuant to the provisions of House Bill No. 4, supra.

Article 4357, Vernon's Civil Statutes, prescribes the formalities of presenting a claim to the Comptroller.  The Article also states:

". . . No claim shall be paid from appropriations unless presented to the Comptroller for payment within two (2) years from the close of the fiscal year for which such appropriations were made, but any claim not presented for payment within such period may be presented to the Legislature as other claims for which no appropriations are available."

Should a claim for payment to Mr. Vessels for the difference between the salary rate of $494 per month and the amount actually paid during the period August 21, 1961 and February 28, 1962, be presented to the Comptroller in proper form within the time prescribed by Article 4357, the Comptroller would be legally authorized to issue his warrant in payment of said claim.

## SUMMARY

The State Comptroller has a ministerial duty, which is mandatory, to issue his warrant in favor of Mr. Jay Vessels, an employee of the Texas Parks Board, in the amount of $494 for the month of March 1962 and each month thereafter, provided that a proper voucher in due form is timely presented. The Comptroller is legally authorized to issue his warrant in favor of Mr. Vessels for the difference between the salary rate of $494 per month and the

amount actually paid during the period August 21, 1961 and February 28, 1962, upon receipt of proper claim in due form within the time prescribed by Article 4357 of Vernon's Civil Statutes.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *F. R. Booth*

F. R. Booth
Assistant

FRB:wb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
John Reeves
Robert Lewis
Bob Shannon
Grady Chandler

REVIEWED FOR THE ATTORNEY GENERAL

BY: Houghton Brownlee, Jr.