THE ATTORNEY GENERAL
OF TEXAS



WAGGONER CARR
ATTORNEY GENERAL

May 31, 1963

Honorable J. M. Falkner
Chairman, Finance Commission
Department of Banking
Austin 14, Texas

Opinion No. C-88

Re: Whether fees and monies
collected and received
by the Regulatory Loan
Commissioner are to be
held outside the State
Treasury or transmitted
to the State Treasurer
to be placed in the Gene-
ral Revenue Fund.

Dear Mr. Falkner:

Your request for an opinion on the above subject
matter poses the following question:

"The question to be decided is
whether under the provisions of the
Act /Senate Bill 15, Acts of the 58th
Legislature, Regular Session, known
as the 'Texas Regulatory Loan Act'7
hereafter referred to, such fees and
monies when collected and received by
the Regulatory Loan Commissioner shall
be placed in a separate fund to be
used by the Commissioner for the en-
forcement of the Act under the direc-
tion of The Finance Commission of Texas
or whether such monies should be trans-
mitted by the Commissioner to the State
Treasurer to be placed in the General
Revenue Fund."

Senate Bill 15, Acts of the 58th Legislature, Regu-
lar Session, is an Act to classify loans and lenders and
provide for their regulation. We quote the following pro-
visions pertinent to your question. Subdivision (a) of
Section 4 provides:

-427-

"There is hereby created the office of Regulatory Loan Commissioner of the State of Texas. The commissioner shall be appointed by the Finance Commission and shall serve at the pleasure of the Finance Commission. The commissioner shall be an employee of the Finance Commission, subject to its orders and directions. The commissioner is authorized to appoint and remove examiners and employees, and to prescribe the duties of each."

Subdivision (b) of Section 4 provides:

"The commissioner shall, from time to time, as directed by the Finance Commission, submit to the Finance Commission a full and complete report of the receipts and expenditures of this office, and the Finance Commission may, from time to time, examine the financial records of the Regulatory Loan Commissioner, or cause them to be examined. In addition, the office of Regulatory Loan Commissioner shall be audited from time to time by the state auditor in the same manner as state departments, and the actual costs of such audit shall be paid to the state auditor from the funds of the Regulatory Loan Commissioner. The Finance Commission shall, as of December 31, 1963, and annually thereafter report to the Governor of the State of Texas the receipts and disbursements of the office of the Regulatory Loan Commissioner for each calendar year."

Subdivision (b) of Section 8 provides:

"If the commissioner shall not so find he shall notify the applicant, who shall, on request within thirty (30) days, be entitled to a hearing on such application within sixty (60) days after the date of said request. The investigation fee shall be retained by the commissioner, but the annual fee shall be returned to the applicant in the event of denial."

Hon. J. M. Falkner, page 3 (C-88)

Subdivision (a) of Section 12 provides:

"At least once each year and at such other times as the commissioner shall deem necessary, the commissioner, or his duly authorized representative shall make an examination of the place of business of each licensee and shall inquire into and examine the loans, transactions, books, accounts, papers, correspondence, and records of such licensee insofar as they pertain to the business regulated by this Act. In the course of such examination, the commissioner or his duly authorized representative shall have free access to the office, places of business, files, safes and vaults of such licensees, and shall have the right to make copies of such books, accounts, papers, correspondence and records. The commissioner or his duly authorized representative may, during the course of such examination, administer oaths and examine any person under oath upon any subject pertinent to any matter about which the commissioner is authorized or required by this Act to consider, investigate, or secure information. Any licensee who shall fail or refuse to let the commissioner or his duly authorized representative examine or make copies of such books, or other relevant documents shall thereby be deemed in violation of this Act and such failure or refusal shall constitute grounds for the suspension or revocation of such license. The information obtained in the course of such examination shall be confidential. Each licensee shall pay to the commissioner the cost of the examination, but not to exceed Fifty Dollars ($50) per day per examiner and the total cost of examinations assessed and charged a licensee in any one calendar year shall not exceed Two Hundred Fifty Dollars ($240) for each licensed office."

Other provisions authorize the Regulatory Loan Commissioner to assess certain fees or charges on licensees provided for in the Act.

A careful study of all the provisions of the Act reveals that nowhere in the Act is the Regulatory Loan Commissioner nor anyone else directed to deposit any fee or charge or any sum of money in the State Treasury to the deposit of any particular fund. On the contrary, we find language that "The investigation fee shall be retained by the commissioner, but the annual fee shall be returned to the applicant in the event of denial." If monies received by the Commissioner were to be deposited in the Treasury, the annual fee could not be returned to the applicant in the event of denial, as provided in subdivision (b) of Section 8 of Senate Bill 15, since no money can be drawn from the Treasury, but in pursuance of specific appropriations made by law. Section 6 of Article VIII of the Constitution of Texas; Pickle v. Finley, 91 Tex. 484, 44 S.W. 480 (1898); Lightfoot v. Lane, 104 Tex. 447, 140 S.W. 89 (1911); State v. Snyder, 66 Tex. 687, 18 S.W. 106 (1886). Furthermore, no duty is imposed by the provisions of Senate Bill 15 on the Comptroller of Public Accounts or the State Treasurer to accept fees for deposit.

Under subdivision (b) of Section 4, above quoted, the Commissioner is required to make a full and complete report of the receipts and expenditures of his office. The State Auditor is required to audit his office from time to time and "the actual costs of such audit shall be paid to the state auditor from the funds of the Regulatory Loan Commissioner." The provisions of subdivision (b) of Section 4 of Senate Bill 15 are similar to the provisions contained in Article 342-112, Vernon's Civil Statutes, with the exception of the provision that the revenues shall be paid into the General Revenue Fund of the State and the provision that the expenses incurred shall never be a charge against the funds of the State.

It has been held on numerous occasions by this office that the expenses of the Banking Department are paid out of fees, penalties and revenues collected by the Department and the disposition of such monies is governed by the provisions of Article 342-112, Vernon's Civil Statutes.

In Attorney General's Opinion WW-725 (1959), it was stated:

> "It is noted that such funds are required to be retained and held by the Banking Department. The Banking Department is further authorized to expend such funds for the payment of expenses of the Department."

In Attorney General's Opinion WW-608 (1959), it was held that the expenditure of Banking Department funds could not be made by the State Building Commission and that any contract entered into for the construction of office space of the Banking Department would have to be executed by that agency.

In Attorney General's Opinion WW-500 (1958), it was held that the Finance Commission may, under the provisions of Article 342-112, authorize the expenditure of money for costs and other expenses incurred by the State Banking Board in the trial of a case brought under the provisions of Article 342-115, Vernon's Civil Statutes.

In Attorney General's Opinion WW-1095 (1961), it was held that in view of the provisions of Article 342-112, that the Position Classification Plan, established by the Position Classification Act of 1961, does not apply to the Finance Commission.

It is noted that the disbursement under Article 342-112 by the Banking Department is directly contrary to the disposition of fees under Article 363, Vernon's Civil Statutes, which provides:

> "All sums collected as examination fees shall be paid by the Commissioner directly to the State treasury to the credit of the General Revenue Fund. Expenses of examination and of the Commissioner in enforcing the provisions of this title shall be paid upon the certificate of the Commissioner by warrant of the Comptroller upon the State treasury."

See Attorney General's Opinion No. O-3928 (1941).

In view of the duties imposed upon the Regulatory Loan Commissioner, the Finance Commission and the State Auditor, it is our opinion that fees and monies collected by the Regulatory Loan Commissioner shall be retained by him and expended for the purposes of the enforcement of the provisions of Senate Bill 15, Acts of the 58th Legislature, Regular Session, under the direction of the Finance Commission of Texas, as provided in Senate Bill 15. You are further advised that such monies cannot be transmitted to the State Treasurer and are not subject to appropriation by the Legislature.

## SUMMARY

Monies collected pursuant to the provisions of Senate Bill 15, Acts of the 58th Legislature, Regular Session, known as the "Texas Regulatory Loan Act" shall be retained by the Regulatory Loan Commissioner to be used by the Commissioner in the enforcement of the provisions of Senate Bill 15, under the direction of the Finance Commission of Texas, as provided for in Senate Bill 15, and such monies are not subject to appropriation by the Legislature.

Yours very truly,

WAGGONER CARR
Attorney General

By John Reeves
John Reeves
Assistant

JR:ms

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Albert P. Jones
J. C. Davis
Gilbert Hargrave
Scott Garrison

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone