

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

June 5, 1972

Hon. Harry P. Burleigh
Executive Director
Water Development Board
P.O. Box 12386, Capitol Station
Austin, Texas    78711

Hon. James U. Cross
Executive Director
Texas Parks & Wildlife Dept.
John H. Reagan Building
Austin, Texas    78701

Opinion No. M- 1141

Re:  Construction of Article
6252-11a, V.C.S., re-
lating to programs for
training and education
of State administrators
and employees.

Gentlemen:

Your requests for an opinion on the above subject
matter ask the following questions regarding Section 16 of
Article V of the current General Appropriation Act:

"1.   Does Article V, Section 16 of the
1971 General Appropriation Act (quoted above)
require the approval of the Governor for the
expenditure of state funds for any program
of education, or does it apply to other mat-
ters such as membership in, or noneducational
activities sponsored by, professional groups
and organizations?

"2.   If Article V, Section 16 of the 1971
General Appropriation Act does so apply to
educational and training programs, would it
nevertheless be necessary to obtain the Gover-
nor's approval of specific items of expenditure
in addition to his approval of the regulations
promulgated pursuant to the State Employees
Training Act of 1969?

"3. Is the Comptroller authorized to approve payment for dues and fees for this Department incident to joining or participating in an organization when approval has been obtained from the Governor previously as required by Section 16, page V-42 of the Appropriations Bill even though the Governor's approval was not additionally obtained prior to to the beginning of the normal membership period of such organization?"

Sections 2, 3, 4 and 5 of Senate Bill 653, Acts of the 61st Legislature, Regular Session, 1969, Cahpter 283, page 849 (codified as Art. 6252-11a, V.C.S.) provides:

"Sec. 2. The Legislature finds that effective state administration is materially aided by programs for the training and education of state administrators and employees and that public moneys spent for these programs serve an important public purpose.

"Sec. 3. A state department, institution, or agency may use available public funds to provide training and education for its administrators and employees. Where considered appropriate by the department, institution, or agency, it may expend public funds to pay the salary, tuition and other fees, travel and living expenses, training stipend, training materials costs and other necessary expenses of the instructor, student, and other participant in the training or education program. A department, institution, or agency may enter into an agreement with another state, local, or federal department, institution, or agency, including a state-supported college or university, to present a training or educational program for its administrators and employees or to join in presenting such a program. Among the purposes that may be served by these training and educational programs are preparation to deal with new technological and legal developments, development of additional work capabilities, and increasing the level of competence.

> "Sec. 4. Public funds may be expended
> by the department, institution, or agency for
> the training or education of an administrator
> or employee only where the training or educa-
> tion is related to the current or prospective
> duty assignment of the administrator or employee
> Where the training or education is so related,
> the department, institution, or agency may
> make the administrator's or employee's pre-
> sent duty assignment, in part or in whole,
> attendance at designated training or educa-
> tion programs.

> "Sec. 5. Each department, institution,
> and agency shall make regulations concerning
> the eligibility of its administrators and
> employees for training and education supported
> by it and the obligations assumed by the ad-
> ministrators and employees upon receiving
> this training and education. However, no
> such regulation shall be made effective, and
> no public funds shall be expended under such
> regulation, until the regulation is approved
> in writing by the governor." (Emphasis added.)

We note that the foregoing provisions do not contain
an appropriation but that they do constitute pre-existing law
for the appropriation and expenditure of moneys for the purposes
contained in Section 16 of Article V of the current General
Appropriation Act. The following restrictions on the expendi-
tures of funds appropriated in the General Appropriation Act
are contained in its Section 16 of Article V; they read as fol-
lows:

> "Restriction on Registration Fees. None
> of the funds appropriated in this Act shall
> be used to pay dues, registration fees or any
> kind of similar expense incurred in joining
> or participating in any type or organization,
> association or society without prior written
> approval of the Governor. Such requests and
> action taken shall be filed with the Legis-
> lative Budget Board." (Emphasis added.)

We construe this rider in the General Appropriation Bill to have the effect of giving a continuing arbitrary veto power to the Governor over all expenditures for dues, registration, or other similar expenses related to educational and training programs authorized by Article 6252-11a.  This, as hereinafter explained, the Legislature could not legally accomplish under the Constitution and laws of this state.  It could, however, legally provide that each statement of expenditure be filed as a matter of record with the Legislative Budget Board for informational and budgetary purposes.

The rider, insofar as the Governor's approval is concerned, delegates to him the arbitrary power and unlimited discretionary decision as to whether a state department or agency can provide training and education for its administrators and employees, with public funds duly appropriated for such purposes including dues, registration fees, or similar expenses.  We must therefore hold that the rider, to the extent of requiring the Governor's approval, is invalid and void.  Rules of construction applicable to statutes generally apply to appropriation bills, which are to be construed in connection with other legislation concerning related matters and with relevant constitutional provisions.  81 C.J.S. 1225-1226, States, Sec. 166, and authorities there cited.

The office of Governor does not exist by virtue of the common law but is a creature of state constitutions.  The Governor has no undefined authority; he has no authority not committed to him by the Constitution and statutes.  Calvert v. Adams, 388 S.W.2d 742 (Tex.Civ.App. 1965, rev. on other grds., 396 S.W.2d 948).

The only authority of the Governor to exercise a substantive veto power over legislation or items of appropriation is clearly set out in Article IV, Section 14, of the Constitution of Texas.  Where the Constitution has spoken and preempted this matter, the Legislature is without power either to add to or detract from this constitutional function. In exercising that veto power, the Governor is exercising a legislative and not an executive or judicial function.  He has only such power as the Constitution confers upon him; he cannot disapprove of certain portions of a bill which are not items of appropriation, and approve the remainder.  Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405 (1911); Annotation, 35 A.L.R. 600, and cited cases; 16 C.J.S. 617, Const. Law. Sec. 138, n. 81; 81 C.J.S. 1220, States, Sec. 164, n. 55; and Attorney General Opinion No. V-1196 (1951).

Aside from the constitutional substantive veto of the Governor granted in Article IV, Section 14, there is no other authority provided for him to have a continuing substantive veto item over the expenditures of appropriated items, such as registration fees, dues, or any other items. The substantive and discretionary decision to expend appropriated funds for these appropriated purposes is a matter reserved by law to the various state departments and agencies, and an attempt by the Legislature to delegate to the Governor the power to disapprove or veto such expenditures and at his own arbitrary discretion, is illegal and unconstitutional, as hereinafter shown.

It is well settled in this State that a rider attached to a general appropriation bill cannot repeal, modify, or amend an existing general law. State v. Steele, 57 Tex. 203 (1882); Linden v. Finley, 92 Tex. 451, 49 S.W. 578 (1899); Moore v. Sheppard, 144 Tex. 537, 192 S.W.2d 559 (1946).

This does not mean that a general appropriation bill may not contain general provisions and details limiting and restricting the use of funds therein appropriated if the provisions are necessarily connected with and incidental to the appropriation and use of funds and if they do not conflict with or amount to general legislation. Conley v. Daughters of the Republic, 106 Tex. 80, 156 S.W. 197 (1913). It is noted, however, that in that case the questions presented were not the same as are here presented and the court did not rule on the issues with which we are now confronted. Since the rider delegates to the Governor a substantive, discretionary veto, the rider amounts, in our opinion, to general legislation in the appropriation bill and is thus unconstitutional and in violation of Article III, Section 35, Constitution of Texas. See Attorney General Opinion Nos. V-1253 (1951), WW-294 (1957), and WW-310 (1957).

We find no Texas court decision directly on this point. However, the Supreme Court of Oklahoma has based its decision in two cases squarely on the proposition that the Legislature may not constitutionally enact a law to require the Governor's subsequent discretionary approval or disapproval to be obtained for the expenditure of funds authorized by an appropriation by the Legislature. The Court held that disapproval by the Governor was tantamount to reduction of an

appropriation which was prohibited by its State constitution. Our Texas Constitution contains the same prohibitions in slightly different wording.[1]  The Oklahoma Court held:

> "Had the Governor attempted to reduce the amount of the appropriation made for the use of the Corporation Commission, his action would have been ineffective under the provisions of our Constitution.  The Legislature is without authority of law to confer upon the Governor the power to reduce the amount of an item of an appropriation.  It cannot authorize him to do indirectly what he is prohibited by the Constitution from doing directly."

---

[1]Our Texas Constitution, Art. IV, Sec. 14, reads, in its relevant portion:

> "...If any bill presented to the Governor contains several items of appropriation he may object to one or more of such items, and approve the other portion of the bill...."

The related provisions of the Constitution of Oklahoma upon which the Supreme Court of that State based its decisions were:

(1)  Art. 5, Sec. 56, which in its relevant portion read, "The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, ...", (27, P.2d 617, 620) and,

(2)  Art. 6, Sec. 12, which in its relevant part read, "Every bill passed by the Legislature, making appropriations of money embracing distinct items, shall, before it becomes a law, be presented to the Governor; if he disapproves such bill, or any item, or appropriation therein contained, he shall communicate such disapproval, with his reasons therefor, to the house in which the bill shall have originated, but all items not disapproved shall have the force and effect of law according to the original provisions of the bill."

State v. Carter, 27 P.2d 617 (Okla.Sup. 1933) (at p. 626). This holding was followed and reaffirmed in State v. Carter, 103 P.2d 518 (1940) by the same Court.

In effect, giving the Governor of Texas a statutory authorization to approve or disapprove an expenditure which had already been appropriated would be a second veto privilege. Our Texas Constitution, like the Constitution of Oklahoma, prohibits the Governor from having more than the one veto provided for in Article IV, Section 14, of the Texas Constitution.

We are aware that the decisions of the courts of last resort of some States have made declarations that their state legislature might constitutionally subject the expenditure or payment of appropriated money to the approval of the Governor or other state officer who is otherwise without constitutional authority to approve or disapprove expenditures. 42 Am.Jur. 752, Public Funds, Sec. 50 (copyright 1942), and 91 A.L.R. 1511-1514. However, we have carefully considered all the cases cited in these texts, and find that none of them base their decision on this proposition of law.[2] In view of

---

[2]Examples are: (1) State v. State Board of Finance, 367 P.2d 925 (N.Mex.Sup. 1961). At p. 929 the statement is made that the executive may control expenditure of appropriated funds, but the holding in the case is that the "...delegation must fail because no standards have been provided...." (p. 932). (2) In Sellers v. Frohmiller, 24 P.2d 666 (Ariz. Sup. 1933) approval of the authority is stated at p. 668, but the decision of the court is grounded on the proposition that the authority granted by statute was unconstitutional because it was general legislation in the general appropriation bill (p. 669). (3) In People v. Tremaine, 168 N.E. 817 (Ct. of App., N.Y. 1929, Ct. of last resort) the Court held that statutory appointment of members of the legislature to a committee which had certain approval powers over expenditure of appropriated funds, was void.

(Footnote 2 continued on following page.)

a clear decision of our Texas Courts[3] and the square holdings of the Oklahoma Supreme Court in construing its state constitutional provisions so similar to those of our own State, and in the absence of any authority to the contrary, we follow the decisions of Oklahoma and the weight of authority. As stated in 42 Am.Jur. 752, supra, with reference to various attempts to subject the expenditure of appropriated money to the approval of the governor or other officer, "in most cases...the courts have held them invalid...".

In answer to your first question, it is our opinion that Section 16 of Article V, of the current General Appropriation Act is illegal and invalid to the extent that it requires the Governor's approval for expenditure of state funds for any program requiring the use of funds appropriated for dues, registration fees or membership fees. The Governor of Texas has no

---

(Footnote 2 continued)
This case further holds that those members of the Legislature hold a separate office of appointment by the Legislature which conflicts with their office as legislators because it is wholly unrelated to their legislative duties. The effect of the Governor's membership on the committee was not considered in this context, but we do not discern why he also was not given certain duties in irreconcilable conflict with his duties as governor. On this ground his appointment likewise would be unconstitutional. The concurring opinion (p. 825) makes further declarations to the effect that the Governor would act as an administrative officer (duties) in conflict with the duties of the state administrative officers to whom the funds were appropriated.

[3]We consider several of the statements in Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405, supra, particularly at pp. 411-412, as strong declarations in support of our position, but the holding in that case was on another ground.

discretion to disapprove or veto the requested expenditure asked for by a State agency under Section 16 of Article V of the current General Appropriation Act; nor does this Section 16 apply to the expenditure of appropriated funds for educational and training programs not requiring the payment of dues, registration fees, or similar expense.

In view of our answer to your first question, your second question in effect becomes moot. Since the Governor has no authority to disapprove the expenditures in question in Section 16 of Article V of the current Appropriation Bill, it is only necessary under that rider to file your expense statement with the Legislative Budget Board for its information and subsequent budgetary considerations.

In answer to the third question, our opinion is that the Comptroller is authorized to approve payment for dues and fees for a State Department incident to joining or participating in an organization without the above discussed Governor's approval contemplated by Section 16 of Article V of the General Appropriation Bill, and without regard to whether the expenditure is made after the beginning of the normal membership period of such organization. Section 16 neither expresses nor necessarily implies that the membership must occur or that the expenditure must be made prior to the beginning of the organization's membership period; nor do we find any other law which makes this requirement.

The Comptroller's duty is ministerial only, and he must issue his warrant in payment of the legal expenditure when the claim is made pursuant to the appropriation. Attorney General Opinion No. C-722A (1966). Fulmore v. Lane, 104 Tex. 449, 140 S.W. 405-406 (1911). The approval of the Governor is not required as we have so held herein, and it may not be required by the substantive determination to make the expenditures left by the statutes to the sound discretion and judgment of the state departments and agencies. In this connection, you have stated:

> "It is not possible to identify all valuable opportunities for membership and participation prior to the beginning of their current membership period nor to anticipate when new ones will occur. If use of appropriated funds under the provisions of Section 16 is to be additionally contingent upon approval by the

Governor in 'advance' of the beginning of
the normal membership period of the organi-
zation, society, or association, the State
of Texas will be denied substantial benefits
it would have derived from professional en-
hancement of our technicians and specialists
through their relationships with the scien-
tific and professional community."

Neither the Governor nor the Comptroller is charged
with any duty to oversee, supervise or veto the above determina-
tion to make the expenditures by the state departments and
agencies, and we must therefore answer your third question in
the affirmative.

## S U M M A R Y

(1)   Section 16 of Article V of the cur-
rent General Appropriation Act insofar as it
requires approval of the Governor for the ex-
penditure of appropriated funds to be used to
pay dues, registration fees, or any kind of
similar expense incurred in joining or partici-
pating in any type of organization, association,
or society, is invalid and void.  All statements
of expenditures for these purposes, however,
should be filed with the Legislative Budget
Board for informational and budgetary consider-
ations.

(2)   The Comptroller is authorized to ap-
prove payment for dues and fees for a state
department or agency incident to joining or
participating in an organization without approval
of the Governor as contemplated by Section 16,
Article V, General Appropriation Act, and even
though the membership does not occur and the
expenditure is not made prior to the beginning
of the normal membership period of such organi-
zation.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

-5561-

Prepared by Roger Tyler
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

J. C. Davis
Houghton Brownlee
Bill Campbell
Rex White
Lynn Shivers

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant